UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC HERRERA, individually, and on behalf of all others similarly situated,<br>*Plaintiff*,<br>v.<br>CORECIVIC OF TENNESSEE, LLC, a Tennessee limited liability company; and DOES 1 through 50, inclusive;<br>*Defendants*. | Case No. 3:25-CV-2298-GPC-DEB<br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF CLASS**<br>**[ECF No. 31]** |

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ECF No. 31 ("Motion for Preliminary Approval" or "Mot."). The Motion is unopposed. *See id*. On July 31, 2026, the Court held a hearing on this matter. ECF No. 36. For the reasons set forth below, the Court **DENIES** without prejudice preliminary approval of the Parties' Settlement Agreement.

## I. BACKGROUND

### A. Factual and Procedural Background

Plaintiff Eric Herrera ("Plaintiff") is a resident of Chula Vista, California and

worked for Defendant CoreCivic of Tennessee, LLC ("CoreCivic") in California as an hourly-paid, non-exempt employee from approximately August 2019 to April 2025. ECF No. 30 ("First Amended Complaint" or "FAC") ¶ 8. Plaintiff alleges that Defendants violated various provisions of the California Labor Code during his employment by failing to pay minimum, straight-time, and overtime wages; failing to provide compliant meal and rest periods; failing to timely pay final wages; failing to furnish accurate wage statements; failing to reimburse necessary business expenses; and failing to produce requested employment records. *Id.* ¶¶ 1, 5. Plaintiff also asserts a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq., and seeks civil penalties under the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 et seq. FAC ¶¶ 97-111, 112-117. Plaintiff seeks to represent a class consisting of Plaintiff and all other persons employed by Defendants in California as hourly-paid or non-exempt employees during the applicable statute of limitations period. FAC ¶ 2.

On May 30, 2025, Plaintiff filed this putative wage-and-hour class action in the Superior Court of California, County of Santa Clara. Mot. at 11.[1] On July 11, 2025, Defendant removed this action to the United States District Court for the Northern District of California pursuant to the Class Action Fairness Act. ECF No. 1. On August 28, 2025, the parties stipulated to transfer venue to this District, and the case was transferred to this Court. ECF Nos. 14, 15. Plaintiff also submitted a notice to Defendant and the California Labor & Workforce Development Agency ("LWDA") pursuant to PAGA and, on August 29, 2025, filed a separate PAGA action in San Diego County Superior Court. ECF No. 31-1 (Yslas Decl.) ¶ 5. On January 26, 2026, after the Court granted leave to amend, Plaintiff filed the operative First Amended Complaint, which incorporated the PAGA claim into this action. ECF No. 29; FAC.

/ / /

[1] Page numbers refer to the CM/ECF pagination.

**B. Settlement Negotiation**

On November 24, 2026, the parties participated in an Early Neutral Evaluation Conference before Magistrate Judge Daniel E. Butcher. ECF No. 23. The settlement negotiations "were at arm's length and, although conducted in a professional manner, were adversarial," and included the exchange of initial disclosures and representative time and payroll data. Mot. at 12. On December 16, 2025, another Early Neutral Evaluation Conference was held, and the parties reached a settlement in principle. ECF No. 25. The parties thereafter executed the Class Action and PAGA Settlement Agreement. ECF No. 31-1, Ex. 2 ("Settlement Agreement" or "SA").

**C. Settlement Agreement**

The material terms of the Settlement Agreement include the following:

**Settlement Class.** The Settlement Class consists of all current and former non-exempt employees employed by Defendants in California between July 11, 2023, and December 12, 2025. SA at 44.

**Settlement Amount.** A maximum settlement amount of $624,550.00 is to be paid by Defendant in full satisfaction of all released claims, inclusive of all individual settlement payments, any approved class representative service award, attorneys' fees and costs, settlement administration costs, the PAGA settlement payment, and the payment to the California Labor and Workforce Development Agency. *Id*.

**Escalator Provision.** Defendant represents that approximately 1,200 Settlement Class Members worked approximately 51,800 workweeks during the class period. If the total number of workweeks exceeds that estimate by more than eight percent, Defendant must proportionally increase the total Settlement Amount. *Id*.

**Allocation of Settlement Payments.** After deductions approved by the Court, the Net Settlement Amount will be distributed on a pro rata basis according to each participating Settlement Class Member's qualifying workweeks during the class period. *Id*. at 50.

**Release.** In exchange for settlement benefits, participating Settlement Class Members will release all wage-and-hour claims that were asserted or could have been asserted based on the facts alleged in this action, including claims arising under the California Labor Code and California Business and Professions Code Sections 17200 et seq., during the applicable release period. *Id*. at 40.

**Released PAGA Claims.** Aggrieved employees will release the PAGA claims asserted in the operative complaint and PAGA notice arising during the PAGA period. *Id*. Class Members who are also PAGA Members will receive a share of the PAGA Settlement Payment regardless of whether the Class Member opts out of the SA. *Id*. at 40-41.

**PAGA Allocation.** The Settlement allocates $80,000.00 to resolve Plaintiff's PAGA claims. Of that amount, $52,000.00 (65%) will be paid to the California Labor and Workforce Development Agency, and $28,000.00 (35%) will be distributed among PAGA Members. *Id*. at 39, 49.

**Tax Allocation.** As to the portion of the Net Settlement Fund paid that constitutes wages, the employer portion of the applicable employment taxes shall not be paid from the Fund. *Id*. at 40.

**Attorneys' Fees, Costs, and Service Award.** Class Counsel may seek attorneys' fees of up to thirty percent of the Settlement Amount ($187,365.00), litigation costs of up to $12,000.00, and a service award of up to $10,000.00 for Plaintiff, subject to Court approval. *Id*. at 38, 44, 45, 48.

**Settlement Administration.** The parties have designated Phoenix Class Action Administrators as the Settlement Administrator, with administration costs capped at $15,500.00. *Id*. at 43, 49.

**Notice.** Within twenty-one days of the Preliminary Approval Order, Defendant will provide the Settlement Class List to the Settlement Administrator. *Id*. at 51. Within twenty-one days after receiving the Settlement Class List, the Settlement Administrator

will mail a Notice Packet to Settlement Class Members by first-class U.S. mail, informing them of the Settlement and their rights to participate, object, or request exclusion. *Id*. at 51-52.

## II. DISCUSSION

### A. Legal Standard

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, when the parties settle before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003). To that end, a reviewing court must engage in two-step process. First, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Second, after providing the class with notice of the proposed settlement, a reviewing court may then approve it only after a hearing and finding that it is "fair, reasonable, and adequate." Fed. R. Civ. 23(e)(2).

At the preliminary approval stage, the reviewing court is engaged in the first inquiry and considers whether it is likely to approve of the proposal and certify the class. Fed. R. Civ. P. 23(e)(1)(B).

### B. Preliminary Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any proposed class action settlement. Before approving a proposed class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Such an evaluation is made in the context of the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In Re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008). At the preliminary approval stage, the

question is whether approval under the "fair, reasonable, and adequate" standard is likely. Fed. R. Civ. P. 23(e)(1)(B). Any fairness determination requires the Court to "focus[ ] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton*, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action is "fair reasonable, and adequate." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment). As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The first and second factors are viewed as "procedural" in nature, and the third and fourth factors are viewed as "substantive" in nature. Fed. R. Civ. P. 23(e)(2), advisory committee notes (2018 amendment)

The Court also considers factors outlined by the Ninth Circuit to determine the fairness, adequacy, and reasonableness of the settlement: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). Further, because settlement was reached before formal class certification, a "higher level of scrutiny for evidence of collusion or other conflicts of interest [is] required...." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011).

For the reasons that follow, the Court DENIES without prejudice preliminary approval of the Settlement.

**1. The Extent of Discovery and the Scope of the Investigation**

A settlement that has been reached before plaintiff's counsel "ha[ve] had the benefit of the discovery necessary to make an informed evaluation of the case and, accordingly, to strike a fair and adequate settlement" is inherently worthy of a court's skepticism. *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 397 (C.D. Cal. 2007); *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1074 (C.D. Cal. 2023). Specifically, a plaintiff will not be able to broker a fair settlement without having been "armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta*, 243 F.R.D. at 396.

When counsel "have taken few investigative steps that could reliably develop the extent of [the defendant's] liability[,]" denial of preliminary approval is appropriate. *Wilson v. J.B. Hunt Logistics, Inc.*, 2020 WL 11626082, at *3 (C.D. Cal. Nov. 13, 2020) (cleaned up). Further, in wage-and-hour class actions, putative class counsel often gather evidence of "company practices," including "how often class members were denied breaks [or] forced to take late breaks." *Id.*; *cf. Freeze v. PVH Corp.*, 2020 WL 5769085, at *6 (C.D. Cal. July 1, 2020) (granting preliminary approval when discovery included "production of all relevant policy and procedure documents, data points relevant

to the potential damages, and time and payroll records for all Class Members for the entire relevant time period" as well as "interviews, background investigations, and analyses of employment records").

Here, Plaintiff has not stated with any specificity what documentation Defendants produced and how it was sufficient to estimate Defendants' practices and policies relevant to the class's claims. Plaintiff only states that initial disclosures were exchanged, "extensive information on the company's wage and hour policies and practices" as well as "a sizable sample of time and payroll records for the Settlement Class Members" was provided, and "hundreds of pages of relevant documents" were produced. ECF No. 31-1 at 6.

District courts have often denied preliminary approval of wage-and-hour class settlements reached after far more extensive investigations than undertaken in this instant case. *See, e.g.*, *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 610–11 (E.D. Cal. 2015) (denying preliminary approval of a class settlement where class counsel relied heavily on information provided by the named plaintiff and defendant, assumed the number of violations, and did not present documentation regarding the extent of discovery); *Wilson v. J.B. Hunt Logistics, Inc.*, No. 18-CV-03487-SVW-AFMX, 2020 WL 11626082, at *3 (C.D. Cal. Nov. 13, 2020) ("While class counsel does appear to have conducted some interviews or depositions with class members, there is little indication of what was learned. There is no indication how many class members were interviewed or deposed, whether any class members provided information supporting Plaintiff's allegations, and whether any class members gave estimates of the frequency of the wage-and-hour violations at issue.") (cleaned up).

Accordingly, Plaintiff's provided statements as to extent of discovery and the scope of the investigation here favor denying preliminary approval.

**2. The Adequacy of the Class Relief**

Balancing the class's potential recovery against the amount offered in settlement is

"perhaps the most important factor to consider" in preliminary approval. *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016). It is "not a hollow exercise in which the Court blindly accepts the parties' unsupported assertions." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 970 (N.D. Cal. 2019). "Plaintiffs seeking preliminary approval should show their work by explaining the relative value of their claims in significant detail. For example, in a wage-and-hour case like this one, plaintiffs should show or estimate how many employees were allegedly shortchanged, calculate and explain to the Court the amount by which typical employees were allegedly shortchanged on an hourly or daily basis, and show or estimate the number of hours or days the employees were allegedly shortchanged." *Eddings v. DS Servs. of Am., Inc.*, No. 15-CV-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016). Plaintiff should also "explain the source of many of the figures or, if they are based on assumptions, why those assumptions are reasonable." *Louangamath v. Spectranetics Corp.*, No. 18-CV-03634-JST, 2021 WL 9274552, at *2 (N.D. Cal. May 19, 2021).

Here, Plaintiff calculated minimum and overtime wages claims by assuming Defendants were liable for one hour of unpaid worktime per workweek, which resulted in "an estimate of approximately $2,767,674.00 (51,800 workweeks x $35.62 hourly rate x 1.5 overtime rate x 0.50 hour of unpaid work per workweek)." Mot. at 24. However, "Class Counsel applied a risk discount based on a 20% chance of succeeding at class certification and a 20% chance of succeeding at trial on the merits because liability depends on whether Defendant knew or should have known that class members were working off-the-clock, yielding a realistic damage estimate of approximately $110,706.96 ($2,767,674.00 x 20% x 20%)." *Id*.

For meal period claims, "Class Counsel's expert analyzed Defendant's timekeeping records and found that approximately 29.30% of all meal break violations consisting of short, late, or missed meal periods." *Id*. Thus, potential liability for the meal period claim is approximately $2,230,763.02 (213,743 shifts x $35.62 hourly rate x

29.30% violation rate).” *Id*. However, “Class Counsel discounted this figure based on a 25% chance of succeeding at class certification and a 20% chance of succeeding at trial, yielding a realistic damage estimate of approximately $111,538.15 ($2,230,763.02 x 25% x 20%).” *Id*. at 25.

In terms of rest breaks, a violation rate of 29.30% was, again, assumed, but no explanation for the assumption was provided. With that rate, “Defendant’s potential liability for the rest period claim is approximately $2,257,439.12 (216,299 shifts x $35.62 hourly rate x 29.30% violation rate).” *Id*. Again, “Class Counsel discounted this claim based on a 15% chance of succeeding at class certification and a 20% chance of succeeding at trial, yielding a realistic damage estimate of approximately $67,723.17 ($2,257,439.12 x 15% x 20%).” *Id*.

As to reimbursements, Class Counsel assumed that Plaintiff’s “estimate that he incurred $30.00 in unreimbursed expenses per month” could be applied to each class member, resulting in approximately $388,500.00 in potential exposure. *Id*. at 26. Then, “Class Counsel discounted this claim based on a 20% chance of succeeding at class certification and a 25% chance of succeeding at trial, yielding a realistic damage estimate of approximately $19,425.00 ($388,500.00 x 20% x 25%).” *Id*.

Finally, for waiting time penalties, inaccurate wage statements, and PAGA violations, the calculated “maximum potential liability for waiting time penalties is approximately $3,207,937.20 ([316 employees x $35.62 hourly rate x 8.00 hours/day x 30 days] + [316 employees x $35.62 hourly rate x 1 hour/day x 1.5 overtime rate x 30 days]) based on approximately 316 terminated class members during the 3-year statute of limitations period, approximately $3,272,000.00 (818 employees x $4,000 statutory maximum) for inaccurate wage statements based on approximately 818 class members who worked during the 1-year statute of limitations period, and approximately $1,285,300.00 for PAGA violations based on the Court assessing a $100 penalty for initial violations for all 12,853 pay periods within the PAGA period.” *Id*. at 27. As

before, "Counsel discounted these figures to account for the risk and uncertainty of prevailing at trial, resulting in a realistic evaluation of approximately $96,238.12 ($3,207,937.20 x 15% x 20%) for waiting time penalty claims, approximately $98,160.00 ($3,272,000.00 x 15% x 20%) for wage statement penalty claims, and $128,530.00 for PAGA penalties, or approximately $322,928.12 total for statutory and civil penalties." *Id.* at 28.

These estimates do not provide sufficient detail. For example, Plaintiff's counsel does not explain (1) why it was assumed Defendants were liable for only one hour of unpaid worktime for the minimum and overtime wage claims; (2) why a 29.30% violation rate was used for the rest break claims; and (3) why Plaintiff's specific experience was representative of the class for reimbursement claims. *See Louangamath*, 2021 WL 9274552, at *3.

Additionally, the estimated maximum recovery was $15,409,613.34, and after considering the discounts, Plaintiff's "realistic estimated recovery" is $632,321.40. Meanwhile, the proposed settlement is $624,550.00. This figure might be "98.77 % of the realistic maximum recovery," Mot. at 28, but it is only 4.05% of Plaintiff's estimated maximum recovery. Additionally, "to truly understand the discount of the class recovery, the recoverable maximum should be compared to what the *class* will recover from the settlement." *Louangamath*, 2021 WL 9274552, at *3. Here, class members would only collect $319,685.00 after deducting the maximum proposed attorney's fees and costs, Class Representative incentive award, PAGA payment, and settlement administrator fee. Thus, settlement amounts to only 2.07% of the maximum potential value of claims based on Plaintiff's counsel's figures. None of Plaintiff's cited cases suggest that a settlement representing 2.07% of what the class could get at trial is reasonable.

Finally, Plaintiff has failed to supply "enough information to evaluate the strengths and weaknesses of [his] case." *Eddings v. DS Servs. of Am., Inc.*, No. 15-CV-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016). Plaintiff has only provided generic

statements of various risks inherent to class action, namely, that the Court might deny class certification as to one or more claims or that Plaintiff might fail to prove a claim at trial. Mot. at 21-22. Courts often require more. *See Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 970 (N.D. Cal. 2019); *Hunt v. VEP Healthcare, Inc.*, No. 16-CV-04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017) ("The motion for preliminary approval makes abstract gestures to the uncertainties of litigation, rather than offering a careful analysis of the claims and the strength or weakness of any potential defenses."); *Eddings*, 2016 WL 3390477, at *1 ("The plaintiffs list legal issues that this case might present and positions that the defendants might take, but they don't analyze those issues or evaluate the strength or weakness of defendants' positions. A party moving for preliminary approval should cite case law and apply it to explain why each claim or defense in the case is more or less likely to prove meritorious."); *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1076 (C.D. Cal. 2023).

In sum, any future motion should explain the basis for calculating the maximum value of Plaintiff's claims and articulate particularized reasons why the proposed discount is appropriate.

**C. Provisional Class Certification under Rule 23**

When a district court denies preliminary approval of a class action settlement, it may decline to decide whether the proposed settlement class may be properly certified under Rule 23(a) and 23(b)(3). *See, e.g., Shin v. Plantronics, Inc.*, 2019 WL 2515827, at *7 (N.D. Cal. June 17, 2019); *Fisher v. Osmose Utilities Servs.*, 2021 WL 1259731, at *9 (E.D. Cal. Apr. 5, 2021), *R&R adopted*, 2021 WL 3124602 (E.D. Cal. July 23, 2021); *Louangamath v. Spectranetics Corp.*, No. 18-CV-03634-JST, 2021 WL 9274552, at *5 (N.D. Cal. May 19, 2021). Therefore, the Court does not decide at this time whether class certification would be appropriate in this case.

/ / /

/ / /

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** the motion for preliminary settlement approval. The Court defers ruling on preliminary class certification until the parties present a settlement that merits preliminary approval.

**IT IS SO ORDERED.**

Dated: August 3, 2026

Hon. Gonzalo P. Curiel
United States District Judge